Florida

# NOTE

FHA Case No.

███████████

**THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.**

MARCH 19, 2008　　　　　　　　　　　　　　　　　　　　　　　　　　LOAN #
　　　　[Date]
3618 WHITTIER STREET, TAMPA, FL  33619-1552
　　　　　　　　　　　　　　　　　　[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BANK OF AMERICA N.A.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED FIFTY EIGHT THOUSAND FIVE HUNDRED TWELVE AND 00/100

Dollars (U.S. $   158,512.00   ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  SIX AND THREE-EIGHTHS percent (   6.375   %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

　　Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MAY 01　　　　, 2008　　. Any principal and interest remaining on the first day of  APRIL　　　　　　, 2038　　, will be due on that date, which is called the "Maturity Date."

(B) Place

　　Payment shall be made at BANK OF AMERICA, N.A., P.O. BOX 535318, ATLANTA, GEORGIA 30353-5318　　　　　　　　　　　　　　　　　　　or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

　　Each monthly payment of principal and interest will be in the amount of U.S. $　　　988.91　　 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

　　If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge　　☐ Growing Equity Allonge　　☐ Other [specify]

**FHA Multistate Fixed Rate Note - 10/95**
**BS1RFL** (0404)
　VMP Mortgage Solutions, Inc. - (800)521-7291　　　　　　　　　　　1RFL 03/18/08 10:44 AM

Page 1 of 3

**EXHIBIT A**

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of     FOUR     percent (    4.0     %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

__*Willie Knight*_____ (Seal)        _____ (Seal)
WILLIE KNIGHT                    -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                         -Borrower


PAY TO THE ORDER OF
_____
WITHOUT RECOURSE
Bank of America, N.A.

BY __*Christina M. Schmitt*_____
   CHRISTINA M. SCHMITT
   ASSISTANT VICE PRESIDENT

BS1RFL (0404)                              Page 3 of 3
1RFL 03/18/08 10:44 AM



**Home Loans**

BAC Home Loans Servicing, LP
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

WILLIE KNIGHT
3618 WHITTIER ST
TAMPA, FL 33619

Notice Date: September 28, 2010

Account No:
FHA Case No.:

Property Address:
3618 WHITTIER ST
TAMPA, FL 33619

## AMENDED AND RESTATED NOTE
### State of Florida

Origination Date: March 19, 2008

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred fifty five thousand seven hundred twenty eight and 67/100 (Dollars U.S.) $155,728.67 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of four and 75/100, (4.750%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 1, 2010. Any principal and interest remaining on the October 1, 2040 will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made to Payment Processing  PO Box 650070  Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. 812.35. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

[X] Graduated Payment Allonge     [ ] Growing Equity Allonge     [ ] Other [specify]



### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

#### (A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment. of the overdue amount of each payment.

#### (B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

#### (C) Payment of Costs and Expenses
If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

### 7. WAIVERS
Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

### 10. GROUNDS FOR ACCELERATION OF DEBT
(A) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:
(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a

period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn- St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_____ Dated 10/04/10
WILLIE KNIGHT

PAY TO THE ORDER OF
Secretary of Housing and Urban Development of
Washington D.C., and his/her successors and assigns
WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY: _____
BEULAH DORE
ASSISTANT VICE PRESIDENT

Return To:
LOAN #

JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD., BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256
This document was prepared by:
VALERIE COLLINS
BANK OF AMERICA N.A.
9000 SOUTHSIDE BLVD - BLDG 600
JACKSONVILLE, FL 322560000

INSTRUMENT#: 2008101530
PG 1169-1176 03/27/2008 at 03:38:06 PM,
DOC TAX PD(F.S.201.08) $555.10 INT.TAX PD
(F.S.199) $317.02 DEPUTY CLERK: BKING Pat
Frank, Clerk of the Circuit Court Hillsborough
County

KNIGHT    W

w/c
PRIORITY TITLE OF FLORIDA
10008 PARK PLACE AVE.
RIVERVIEW State of Florida

———[Space Above This Line For Recording Data]———

# MORTGAGE

FHA Case No.

LOAN #

THIS MORTGAGE ("Security Instrument") is given on   MARCH 19, 2008
The Mortgagor is WILLIE KNIGHT , A MARRIED MAN JOINED BY HIS SPOUSE,
SYLVIA KNIGHT

, whose address is
4420 BASS ST, TAMPA, FL  33617

("Borrower"). This Security Instrument is given to BANK OF AMERICA N.A.

which is organized and existing under the laws of UNITED STATES OF AMERICA
and whose address is  9000 SOUTHSIDE BLVD - BLDG 600, JACKSONVILLE, FL  322560000
("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED FIFTY EIGHT THOUSAND FIVE HUNDRED TWELVE AND 00/100
Dollars (U.S. $    158,512.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on APRIL 01, 2038               . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this

FHA Florida Mortgage - 4/96
VMP®-4R(FL) (0305)
VMP Mortgage Solutions (800)521-7291     Initials: BK NK
Page 1 of 8



FHFL 03/18/08 10:44 AM

Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in  HILLSBOROUGH
County, Florida:

**Lot 4, Block 17, together with the East 1/2 of the closed alley abutting on the West side thereof, GRANT PARK, as per plat thereof, recorded in Plat Book 6, Page 30, of the Public Records of Hillsborough County, Florida**

Parcel ID Number:     A1029194BX000170/,00040
which has the address of    3618 WHITTIER STREET                                                               [Street]
              TAMPA                        [City], Florida      33619-1552  [Zip Code] ("Property Address");

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
    **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP®-4R(FL) (0305)                   Page 2 of 8                                                Initials: _AK_

FHFL 03/18/08 10:44 AM

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

VMP®-4R(FL) (0305)    Page 3 of 8    Initials: _____

FHFL 03/18/08 10:44 AM

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

VMP®-4R(FL) (0305)      Page 4 of 8      Initials: _____

FHFL 03/18/08 10:44 AM

**9. Grounds for Acceleration of Debt.**
  **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
  **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
  (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
  (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
  **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
  **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
  **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.
  **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.
  **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor

VMP®-4R(FL) (0305)                 Page 5 of 8                           Initials:

FHFL 03/18/08 10:44 AM

in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq. ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ] Condominium Rider  [ ] Growing Equity Rider  [ ] Other [specify]
[ ] Planned Unit Development Rider  [ ] Graduated Payment Rider

VMP®-4R(FL) (0305)　　　　　Page 7 of 8　　　　　Initials: _____

FHFL 03/18/08 10:44 AM

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____  
RANSOME L. PETERMAN JR.

_____ (Seal)  
WILLIE KNIGHT                                    -Borrower

_____  
IDA WILLIAMS-CAMPBELL

_____ (Seal)  
                                                           -Borrower

_____ (Seal)  
                                                           -Borrower

_____ (Seal)  
                                                           -Borrower

_____ (Seal)  
                                                           -Borrower

_____ (Seal)  
                                                           -Borrower

_____ (Seal)  
                                                           -Borrower

_____ (Seal)  
SYLVIA KNIGHT                                   -Borrower

STATE OF FLORIDA,        HILLSBOROUGH        County ss:

The foregoing instrument was acknowledged before me this March 19, 2008 by WILLIE KNIGHT AND SYLVIA KNIGHT

who is personally known to me or who has produced DRIVER LICENSE as identification.

IDA WILLIAMS-CAMPBELL  
Notary Public, State of Florida  
My Comm. Expires July 29, 2009  
No. DD0437259  
Bonded thru 800-432-4254  
Florida Notary Assn., Inc.

_Ida Williams Campbell_  
Notary Public

VMP®-4R(FL) (0305)                                    Page 8 of 8

FHFL 03/18/08 10:44 AM

INSTRUMENT#: 2013443038, BK: 22277 PG: 1746 PGS: 1746 - 1747 11/25/2013 at 10:20:01 AM, DEPUTY CLERK: DJOHNSON Pat Frank Clerk of the Circuit Court Hillsborough County

Case 8:16-bk-07351-CPM    Doc 6-1    Filed 10/20/16    Page 15 of 19

THIS IS NOT A CERTIFIED COPY

APN #: A10291948X000170/00040
Prepared by: Joe Simmons
When Recorded Mail To:
OCWEN LOAN SERVICING, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
49718001163227
Attorney Code: 24508

## ASSIGNMENT OF MORTGAGE
## FLORIDA

This **ASSIGNMENT OF MORTGAGE** is from **BANK OF AMERICA, N.A,** whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignor") to **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2** address is C/O OCWEN LOAN SERVICING, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the Public Records of **HILLSBOROUGH** County, State of **FLORIDA**, as follows;

Mortgagor: WILLIE KNIGHT AND SYLVIA KNIGHT
Mortgagee: BANK OF AMERICA, N.A
Document Date: MARCH 19, 2008
Amount: $ 158,512.00
Recording Date: MARCH 27, 2008
Book/Volume/Docket/Liber: 18530
Page/Folio: 1169-1176
Instrument: 2006109694
Property Address: 3618 WHITTIER STREET, TAMPA, FL 33619-1552
LEGAL DESCRIPTION

Lot 4, Block 17, together with the East 1/2 of the closed alley abutting on the West side thereof, GRANT PARK, as per plat thereof, recorded in Plat Book 6, Page 30, of the Public Records of Hillsborough County, Florida

THIS IS NOT A CERTIFIED COPY

APN #: A10291948X000170/00040
Prepared by: Joe Simmons
When Recorded Mail To:
OCWEN LOAN SERVICING, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
497718001163227
Attorney Code: 24508

This Assignment is made without recourse, representation or warranty.
IN WITNESS WHEREOF the Assignor has caused these presents to be executed in its name, by its proper officer thereunto duly authorized, the NOVEMBER 07, 2013.

Signed, sealed and delivered in the presence of:

_____
5720 Premier Park Dr,          Jason R. Berkeley
West Palm Beach, FL 33407

BANK OF AMERICA, N.A
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC

By: _____
Name: Joel Pires
Title: Contract Manager

_____
Victoria Vazquez

Power of Attorney recorded on: JANUARY 31, 2013
Book: 21649 Page: 1673
Instrument number: 2013043812

5720 Premier Park Dr,
West Palm Beach, FL 33407

State of Florida      )
                      )SS.
County of Palm Beach  )

On NOVEMBER 07, 2013. , before me, the undersigned, a Notary Public for said County and State, personally appeared _____ Joel Pires _____, of 5720 Premier Park Dr, West Palm Beach, FL 33407, personally known to me to be the person that executed the foregoing instrument and acknowledged that he/she is the Contract Manager at OCWEN LOAN SERVICING, LLC. A Limited Liability Company, Attorney-in-Fact for BANK OF AMERICA, N.A, and that he/she did execute the foregoing instrument. He/She is personally known to me.

Witness my hand and official seal.

Notary Public – Christopher Kelley

Notary Public State of Florida
Christopher Kelley
My Commission EE 861683
Expires 12/30/2016

INSTRUMENT#: 2016050658, BK: 23862 PG: 294 PGS: 294 - 296 02/04/2016 at 08:56:47 AM, DEPUTY CLERK:BKING Pat Frank,Clerk of the Circuit Court Hillsborough County

Case 8:16-bk-07351-CPM Doc 6-1 Filed 10/20/16 Page 17 of 19

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

_____Space above for Recorder's use _____

Loan No:
Svcr Ln No:



## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**, whose address is **C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 402 STRAND STREET, FREDERIKSTED, USVI 00840-3531**, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2015-1**, whose address is **C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 1110 STRAND STREET, SUITE 2A, CHRISTIANSTED, USVI 00820**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **3/19/2008**
Original Loan Amount: **$158,512.00**
Executed by (Borrower(s)): **WILLIE KNIGHT, A MARRIED MAN JOINED BY HIS SPOUSE, SYLVIA KNIGHT**
Original Lender: **BANK OF AMERICA, N.A.**
Filed of Record: In Book/Liber/Volume **18530**, Page **1169-1176**,
Document/Instrument No: **2008109694** in the Office of County Recorder of **HILLSBOROUGH** County, FL, Recorded on **3/27/2008**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **3618 WHITTIER STREET, TAMPA, FLORIDA 33619-1552**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: __12/31/15__

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**

By: **REBECCA TOMLINSON**
Title: **VICE PRESIDENT**
FAY SERVICING, LLC AS ATTORNEY IN
FACT FOR CHRISTIANA TRUST, A
DIVISION OF WILMINGTON SAVINGS
FUND SOCIETY, FSB, NOT IN ITS
INDIVIDUAL CAPACITY BUT AS TRUSTEE
OF ARLP TRUST 2

Witness Name: **BRUCE DORAN**

Witness Name: **JOHN MURILLO**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of **FLORIDA**
County of **PINELLAS**

On __12/31/15__, before me, TRUEANNE LESZZAK, a Notary Public, personally appeared **REBECCA TOMLINSON, VICE PRESIDENT** of/for **FAY SERVICING, LLC AS ATTORNEY IN FACT FOR CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify REBECCA TOMLINSON, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **TRUEANNE LESZZAK**
My commission expires: **4/5/2019**

TRUEANNE LESZZAK
MY COMMISSION # FF 217425
EXPIRES: April 5, 2019
Bonded Thru Budget Notary Services

EXHIBIT "A"

Lot 4, Block 17, together with the East 1/2 of the closed alley abutting on the West side thereof, GRANT PARK, as per plat thereof, recorded in Plat Book 6, Page 30, of the Public Records of Hillsborough County, Florida